hBROWN, Judge,
dissenting.
High levels of bilirubin in newborn babies are toxic and can result in neurological damage (kemicterus). The degree of risk and magnitude of damage are directly related to the level and duration of excess bilirubin. The recognized treatment for severe eases is a complete blood replacement. Such an exchange must be repeated until the bilirubin is reduced to a safe level. In this case, the trial court found and the record supports a breach of the standard of care because of the delay between the third and fourth transfusions. At that point, the duration of the high serum bilirubin level was unreasonable.
The trial court, however, found no causal connection between Katie’s hearing loss and the medical malpractice. In resolving the question of causation, the trial court relied solely on the testimony and opinions of Dr. Clay. The trial court declined to consider the opinions of the other experts who also testified on the issue of causation. This was clearly erroneous. The majority opinion appears to perpetuate this error.
Dr. Clay, at defendants’ request, physically examined Katie once when she was two years old. Dr. Clay did not review medical reports concerning Katie’s birth and treatment, but relied solely upon a history given by the parents. Dr. Clay agreed that the management of bilirubin levels “can be part of an entire process ... part of it is hearing loss.” Dr. Clay insisted that in cases of bilirubin encephalopathy (kernieterus), the patient would have involuntary movement along with hearing loss and that Katie only had hearing loss. Significantly, Dr. Clay admits that stained teeth are also a sign of bilirubin encephalopathy and that her notes failed to indicate whether or not Katie’s teeth were stained. Dr. Clay, however, agreed that Katie had “mild defused encephalopathy” characterized by developmental delays.
|2Pr. Clay’s bottom line was that she did not know what caused Katie’s hearing loss. Dr. Clay believed that Katie’s hearing loss was due to either bilirubin mismanagement or the circumstances of her birth. The trial court correctly found that the bilirubin level was too high for too long. The only expert who testified about Katie’s birth, Dr. Robinson, definitively ruled out birth circumstances as the cause of her hearing loss. As stated in the majority opinion, “Dr. E.B. Robinson, an expert in obstetrics, testified that it was highly unlikely that any birth event caused the child’s neurological problems.... In his opinion, it was highly unlikely that any birth event caused Katherine’s hearing loss.” Dr. Clay did not review the reports detailing the circumstances of Katie’s birth or first hours of life. It was sophistical for the trial court to rely solely on Dr. Clay’s opinion.
Katie’s treating physician, Dr. Pramanik, testified that forty hours after birth, Katie was normal. Dr. Pramanik’s observation corroborates Dr. Robinson’s belief that no birth event caused Katie’s hearing loss. Plaintiffs’ expert, Dr. Elizabeth James, was of the opinion that the elevated bilirubin levels were most probably the cause of Katie’s hearing loss. Drs. Maisels and Levy, who testified for the defense, agreed that Katie’s hearing loss could have been caused as a result of the excessive bilirubin.
Clearly, this case involved a risky and stressful birth; however, Katie’s condition normalized and she was moved from the Neonatal Intensive Care Unit (NICU) to the regular nursery. Approximately two days later, Katie’s bilirubin levels started to rise. The most significant testimony was that of Drs. Robinson and Pramanik that Katie *745 lacked any signs of hearing loss before her bilirubin was allowed to remain at an excessive level for an extended period of time. The uncontradieted testimony of Dr. Robinson and the observation of Dr. Pramanik reduces to speculation the view that Katie’s hearing loss was caused by the l3circumstances surrounding her birth. Thus, only the risk associated with the duration of the excessively high bilirubin remains the most probable explanation for Katie’s hearing loss.
I respectfully dissent.